1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Jeffery J Harris,                          No. CV-19-00248-TUC-DCB

10                   Plaintiff,                  **ORDER**

11   v.

12   United States of America,

13                   Defendant.

14

15          The Court grants the Defendant's Motion for Summary Judgment[1] and denies the

16   Plaintiff's Crossmotion for Summary Judgment.

17          Plaintiff brings this action pro se against Defendant under the Federal Tort Claims

18   Act, which provides a limited waiver of the federal government's sovereign immunity for

19   the common law torts of its officers and employees. *United States v. Orleans*, 425 U.S.

20   807, 813 (1976). Under the FTCA, the United States is liable under circumstances where,

21   as a private person, it would be liable under "the law of the place where the act or omission

22   occurred." 28 U.S.C. § 1346(b); *Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543

23   (9th Cir. 1987). Therefore, Arizona law governs the existence and extent of Defendant's

24   liability for negligence.

25          In Arizona, negligence claims are governed by statute, *Bailey-Null v. ValueOptions*,

26   209 P.3d 1059, 1066 (Ariz. App. 2009), including actions arising from a licensed health

27   care provider's alleged "negligence, misconduct, errors or omissions, or breach of contract

28   ―――――――――――――――――――――――
[1] The Court issues its ruling prior to the Reply by Defendant, but it is optional and unnecessary because the Court rules in favor of the Defendant.

1    in the rendering of health care, medical services, nursing services or other health-related

2    services or for the rendering of such health care, medical services, nursing services or other

3    health-related services, without express or implied consent..." A.R.S. § 12-561(2). Plaintiff

4    brings both negligence and lack of consent (battery) claims against the Defendant.

5        Plaintiff alleges that during a routine surgical procedure performed on March 2,

6    2016 to remove an old pacemaker[2] and install a new one, the surgeon allegedly introduced

7    infectious bacterial contamination into the pacemaker pocket which was otherwise closed

8    against infection. Two months later, after infection set in allegedly due to the negligent

9    surgical contamination of the pacemaker pocket, Defendant had an opportunity to limit

10   further harm to the Plaintiff to two (additional) surgeries to which Plaintiff consented: one

11   to extract Plaintiff's pacemaker from the negligently infected pocket, and after treatment

12   by antibiotics for several weeks, a second surgery to replace it with a new pacemaker. (P

13   CMSJ/Response (Doc. 82) at 2.)

14       Additionally, Defendant failed to minimize the harm to Plaintiff and committed a

15   battery by performing the second surgery only three days after removing the pacemaker

16   from the infected pocket instead of administering the several-week regimen of antibiotics.

17   *Id.* at 3. As a result of Defendant's negligence in performing the March 2, 2016 surgery to

18   replace the pacemaker that was nearing its life expectancy and the battery caused the

19   "recurrent pocket infections and their complications extended—for another year and no

20   less than five further surgeries—the treatment necessary to resolve a hospital-induced

21   infection that needlessly became life threatening." (P CMSJ/Response (Doc. 82) at 2-3.)

22   Plaintiff's theory of the case is that the negligently induced infection was the proximate

23   cause of all his injuries. *Id.*

24       A.    Counts One and Two: Negligence (March 2, 2016 surgery)

25       A health care provider bears the duty "to exercise that degree of care, skill and

26   learning expected of a reasonable, prudent health care provider" in the same profession or

27   class and under similar circumstances. A.R.S. § 12-563(1). The yardstick by which a

28
_____
[2] The Court understands that the surgical procedures involved placement of the pacemaker generator but for simplicity refers to device as a pacemaker.

provider discharges this duty is known as the standard of care. *Smethers v. Campion*, 108 P.3d 946, 949 (Ariz. App. 2005). A plaintiff must affirmatively establish both this standard and deviation from it by expert medical testimony, unless "grossly apparent" to the layman. *Harvey v. Kellin*, 566 P.2d 297, 300 (Ariz. 1977). He must also prove that the provider's failure to discharge this duty constituted the proximate cause of injury, A.R.S. § 12-563(2), "through expert medical testimony, unless the connection is readily apparent to the trier of fact." *Barrett v. Harris*, 86 P.3d 954, 958 (Ariz. App. 2004); *cf. Kreisman v. Thomas*, 469 P.2d 107, 110 (Ariz. App. 1970) (showing must be "Probable and not merely Possible").

The Defendant moves for summary judgment because Plaintiff cannot prove a breach in the standard of care by any SAVAHCS provider because he has no expert witness to testify on the standard of care, and Plaintiff is not qualified to offer testimony on this issue. *See* A.R.S. § 12-2604 (prohibits expert testimony on the appropriate standard of care except by "expert witness, [who] shall be a specialist who is board certified in that specialty or claimed specialty.") *See also* Fed. R. Civ. P 702 (where scientific, technical, or other specialized knowledge is offered to assist the trier of fact to understand the evidence or to determine a fact in issue, a witness must be qualified as an expert in that knowledge, skill, experience, training, or education).

Plaintiff argues that the Defendant's contention that expert opinion testimony is required in this case is faulty because Plaintiff does not assert a claim of negligence against individual health care professionals. (P CMSJ/Response (Doc. 82) at 22.) Plaintiff expressly abandons any such claims of negligence. *Id.* at 22. "Plaintiff has both clarified that he does not assert a claim of negligence against any individual health care professional and has elected to abandon his claims for negligence, if any, that he might have contemplated against . . . Drs. Thal, Buckley, and Mahoney." *Id.* According to the Plaintiff, "[a]bsent a negligence claim against an individual health care professional, the standard of care for individual professionals, as governed by Arizona statute, is not at issue in the case at bar in which Defendant's liability due to negligence is premised on respondeat superior

principles." *Id.* at 22-23 (citing *Simon v. Maricopa Medical Center*, 234 P.3d 623, 632 (Ariz. App. 2010)).

The Court in *Simons* held that A.R.S. § 12–2603 applies only to claims asserted against health care professionals in the context of considering Simon's claims which included "allegations that Maricopa Medical Center (MMC) security guards conspired with the Officers to assault him in MMC's parking lot and that MMC failed to provide adequate medical care after he was beaten." The court held that because Simon included allegations not related to MMC's "rendering professional services" total dismissal of MMC on that ground [] was inappropriate." *Simon,* 234 P.3d at 632.  The court in *Simon* added, "A.R.S. § 12–2603 applies only to claims asserted against health care professionals. A.R.S. § 12–2603(H)(1)(b) defines such a claim and states that a lawsuit is not a claim unless it pertains to "breach of contract, negligence, misconduct, errors or omissions in rendering professional services." *Id.*

Suing SAVAHCS based on respondeat superior does not save the Plaintiff from having to make a prima faice case of negligence to survive summary judgment. "In Arizona, an employer may be held vicariously liable under the doctrine of respondeat superior for the negligent acts of its employee acting within the course and scope of employment." *Engler v. Gulf Interstate Eng'g, Inc.*, 258 P.3d 304, 309–10 (Ariz. App. 2011), <u>*aff'd,*</u> 280 P.3d 599 (2012) *(citing Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.,* 5 P.3d 249, 254 (Ariz. App.2000); Restatement (Third) of Agency ("Restatement") § 7.07(1) (2006)). Plaintiff must still establish that an employee, in this case a health care professional, acted negligently.

Under Arizona's statutes, negligence is failure to exercise "that degree of care, skill and learning expected of a reasonable, prudent health care provider" in the same profession or class and under similar circumstances. A.R.S. § 12-563(1). Put another way, negligence is a failure of due care. *See* (P CMSJ/Response (Doc. 82) at 13 (citing *Falcher v. Saint Luke's Hosp. Med. Ctr.*, 506 P.2d 287, 290 (Ariz. App. 1973) (describing res ipsa loquitor as: "when it is a matter of common knowledge among laymen or medical men, or both,

1    that the injury would not ordinarily have occurred if due care had been exercised")). Simply
2    put, to survive summary judgment, the Plaintiff must address the standard of care and show
3    that the care provided to him at SAVAHCS fell below that standard.
4           The Plaintiff faces this burden against the Defendant's presentation of expert
5    testimony that there was no negligence. Summary Judgment is appropriate only where
6    there is no genuine issue as to any material fact and the moving party is entitled to judgment
7    as a matter of law.  Fed. R. Civ. P.56(c).  It is not for the judge to determine the truth of a
8    matter asserted, weigh the evidence, or determine credibility, but only to determine whether
9    there is a genuine issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
10   The movant carries the burden of showing that there is no genuine issue of material fact,
11   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); all reasonable doubt as to the existence
12   of a genuine issue of fact should be resolved against the moving party, *Hector v. Wiens*,
13   533 F.2d 429, 432 (9th Cir. 1976). This inquiry is decidedly factual in nature and summary
14   judgment is only appropriate if no trier of fact could reasonably find for Plaintiffs.  *See,*
15   *Celotex*, 477 U.S. at 323 (citing *Liberty Lobby*, 477 U.S. at 250 (essentially, the standard
16   for granting summary judgment mirrors that for a directed verdict).   Where different
17   inferences can be drawn, summary judgment is inappropriate.  *Sankovich v. Life Ins. Co.*
18   *of North Am.*, 638 F.2d 136, 140 (9th Cir. 1981).
19          Both parties seek summary judgment, and either way the dispositive issue hinges
20   on whether Plaintiff can make a prima facie case of negligence and/or battery, with
21   Defendant presenting expert testimony on the question of negligence. Plaintiff does not
22   present any expert witness evidence regarding negligence. He presents no expert witness
23   evidence to establish the relevant standard of care or that the care he received fell below
24   that standard of care. Instead, he relies on the theory of res ipsa loquitur, which means the
25   thing speaks for itself. According to the Plaintiff, the infection in the surgical pocket speaks
26   for itself, necessarily establishing that the pacemaker pocket was not kept sterile during
27   surgery and, therefore, the surgery was negligently performed.
28          "'At present, Arizona law holds three elements to be necessary to the application of

res ipsa loquitur: (1) the accident must be of a kind that ordinarily does not occur in the absence of negligence; (2) the accident must be caused by an agency or instrumentality subject to the control of the defendant; (3) the plaintiff must not be in a position to show the particular circumstances that caused the offending agency or instrumentality to operate to [his] injury.'" (P CMSJ/Response (Doc. 82) at 13 (quoting *Lowrey v. Montgomery Kone, Inc.,* 42 P.3d 621, 623 (Ariz. App. 2002) (citations and footnotes omitted)).

Plaintiff argues that all three requirements are established but focuses on the first requirement. He argues that the "[p]robabilities [w]eigh [h]eavily in [f]avor of Plaintiff's [p]ocket [i]nfection [h]aving [b]een [n]egligenty [c]aused." (P CMSJ/Response (Doc. 82) at 13.) He flushes the argument out further by explaining: "Here, only one set of probable facts has been presented for the Court's consideration. In that Defendant has failed to provide an exculpatory explanation for the cause of Plaintiff's injury, the only available explanation as to the likely cause of Plaintiff's pacemaker pocket infection is the one advanced by Plaintiff alleging a negligent break in sterile technique by SAVAHCS staff in attendance during the surgical procedure on March 2, 2016. As such, res ipsa is initially applicable to the instant action; especially in the absence of a viable nonnegligent explanation, common knowledge and experience are sufficient for a layperson or a medical man or both to draw the conclusion that the contamination of an internal pacemaker pocket closed except during surgical intervention was an accident of a kind not likely to occur in the absence of negligence." (P CMSJ/Response (Doc. 82) at 13-14.) In other words, the post-surgical infection raises a triable question of fact on the claim of negligence. To survive summary judgment, the Plaintiff targets the March 2, 2016, surgical procedure performed by Dr. Sergio Thal, M.D., a cardiac electrophysiologist. A cardiac electrophysiologist is a subset of the cardiology specialty that focusses on the treatment of abnormal heart rhythm.

Plaintiff ignores that Defendant presents a nonnegligent explanation for the infection in the pacemaker pocket. He relies on *Lowery* as an example of application of the law of res ipsa loquitur. *Lowery* involved an elevator which unexplainedly dropped several

stories injuring the plaintiff. In *Lowery*, the court distinguished application of res ipsa loquitur in *Faris v. Doctors Hospital, Inc*., 501 P.2d 440 (Ariz. App. 1972), a medical malpractice case. *Lowery*, 42 P3d at 624-25. Plaintiff ignored *Faris*, which goes into historical detail regarding the application of res ipsa loquitur to medical malpractice claims.

Generally, the use of res ipsa loquitur was discouraged and, historically, it was paramount to consider that medicine is not an exact science, the human body is not susceptible to precise understanding, the care required of a medical man is the degree of learning and skill common in his profession or locality, and even with the greatest of care untoward results do occur in surgical and medical procedures. *Faris*, 42 P.3d at 443. Gradually over time, however, it became apparent that there existed a "so-called 'conspiracy of silence,'" making it difficult to get other medical men to testify adversely to an accused medical professional. Additionally, over time "some medical and surgical procedures became so common that in many of them the laymen knew that if properly conducted untoward results did not occur" and "in others medical men (when it was possible to get them to admit it) from their specialized knowledge knew that without negligence the result would have been a good one." *Faris*, 501 P.3d at 443-44.  By 1972, in Arizona, res ipsa loquitur could apply in a medical malpractice case but, as noted in *Faris*, the difficulty in applying the doctrine is knowing where to draw the line. *Id.* at 444.

To apply the doctrine in all cases where an unexpected result occurs would hamstring the development of medical science because " [n]o medical man would dare to use new procedures, especially in surgery, because if injury resulted, he would be prima facie guilty of negligence." *Id.* It is a great responsibility that rests upon the courts "to determine the point at which the doctrine will apply in order to be fair to a patient who has received a result which either common knowledge of laymen or of medical men teaches ordinarily would not occur without negligence, and to be fair to the medical men if there is a result which could occur without negligence and which should not impose upon them the presumption of negligence." *Id.*

Recapping the law in Arizona, the *Faris* court looked to *Boyce v. Brown*, 77 P.2d 455 (Ariz. 1938), where the Supreme Court set out the general rules of law governing malpractice actions against physicians and surgeons as follows:

(1)     One licensed to practice medicine is presumed to possess the degree of skill and learning which is possessed by the average member of the medical profession in good standing in the community in which he practices, and to apply that skill and learning, with ordinary and reasonable care, to cases which come to him for treatment. If he does not possess the requisite skill and learning, or if he does not apply it, he is guilty of malpractice. . . . (citation omitted); (2) Before a physician or surgeon can be held liable as for malpractice, he must have done something in his treatment of his patient which the recognized standard of good medical practice in the community in which he is practicing forbids in such cases, or he must have neglected to do something which such standard requires. . . . (citation omitted); (3) In order to sustain a verdict for the plaintiffs in an action for malpractice, the standard of medical practice in the community must be shown by affirmative evidence, and, unless there is evidence of such a standard, a jury may not be permitted to speculate as to what the required standard is, or whether the defendant has departed therefrom. . . . (citations omitted); (4) Negligence on the part of a physician or surgeon in the treatment of a case is never presumed, but must be affirmatively proven, and no presumption of negligence nor want of skill arises from the mere fact that a treatment was unsuccessful, failed to bring the best results, or that the patient died. . . . (citations omitted); (5) The accepted rule is that negligence on the part of a physician or surgeon, by reason of his departure from the proper standard of practice, must be established by expert medical testimony, unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. . . . (citations omitted); (6) The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant is not sufficient to establish malpractice unless it also appears that the course of treatment followed deviated from one of the methods of treatment approved by the standard in that community. . . .' (51 Ariz. at 420, 421, 77 P.2d at 457). Although Boyce has been modified regarding the standard of care required of medical specialists to that of a nationwide rather than a community basis, *Kronke v. Danielson*, 108 Ariz. 400, 499 P.2d 156 (1972), *Boyce* remains the law for general physicians and surgeons. *Fiske v. Soland*, Ariz.App. 585, 448 P.2d 429 (1968).

*Id.* at 445 (citing *Dodson v. Pohle*, 239 P.2d 591 (Ariz.1952)).

Citing *Boyce*, the court in *Faris* noted that the doctrine of res ipsa loquitur has no application in the ordinary malpractice case, but had been applied in a malpractice case where a rag was left in the belly of a woman for two years following an operation, where she frequently complained of pain to no avail. "The court in *Dodson* had let her case go to the jury under the doctrine of res ipsa loquitur on the basis that the negligence was so

- 8 -

grossly apparent that a layman would have no difficulty in recognizing it. *Tiller v. Von Pohle*, 72 Ariz. 11, 230 P.2d 213 (1951)).” *Faris*, 501 P.3d at 445.

The court in *Faris* noted the same conclusion was reached in *Revels v. Pohle*, 418 P.2d 364 (Ariz.1966) where steel sutures were left in the patient, but in *Atchison, Topeka & Santa Fe R.R. Co. v. Parr*, 391 P.2d 575 (Ariz. 1964), there was a need for expert testimony to establish malpractice or breach of the standard of care unless the negligence is so clearly apparent that a layman can recognize it.” *Faris,* 501 P.3d at 445 (citing *Kleinman v. Armour*, 470 P.2d 703 (Ariz. App. 1970); *Almli v. Updegraff*, 447 P.2d 586 (Ariz. App. 1969); and *see also* Annot. 81 A.L.R.2d 597, § 2 and § 3, Necessity of Expert Evidence to Support an Action for Malpractice against a Physician or Surgeon, as representative of the great majority rule that expert evidence is required to establish the standard of care in a malpractice case (citing *Stallcup v. Coscarart*, 282 P.2d 791 (Ariz. 1955); *Phillips v. Stillwell*, 99 P.2d 104 (Ariz. 1940)).

The limited use of res ipsa loquitur to prove a case of negligence is not new. Presented on summary judgment, it is a question of law for this Court to determine whether this case is an exception to the general rule that expert evidence is required to establish malpractice. The Court finds that alleging infection was negligently introduced to the pacemaker pocket on March 2, 2016, during the surgical procedure performed by Dr. Sergio Thal, M.D., a cardiac electrophysiologist, does not allege a mistake or accident that any layperson can recognize as negligence, such as leaving behind a sponge or surgical tool.

Assuming Plaintiff's position is true that the infection was introduced to the pacemaker pocket during the surgical procedure and not post-surgery during the approximately 30 days he was home before he reported the infection on April 5, 2016, (P CMSJ/Resp (Doc. 82) at 4 (citing SUF ¶ 8), Plaintiff's claim involves the medical procedure of keeping a surgical environment sterile, which is something that is not common knowledge. *See* (D MSJ (Doc. 53) at 14-15 (citing *Contreras v. St. Luke's Hosp*., 144 Cal. Rptr. 647, 655 (Calif. 1978) (res ipsa loquitur not applicable merely because an

infection developed after orthopedic surgery); *Smith v. Curran*, 472 P.2d 769, 770-772 (Colo. App. 1970) (same); *Montana Deaconess Hospital v. Gratton*, 545 P.2d 670, 673 (Mont. 1976) (same); *Pink v. Slater*, 281 P.2d 272 (Calif. 1955) (res ipsa loquitur not applicable to infection after plastic surgery); *Folk v. Kilk,* 126 Cal. Rptr. 172 (Calif. 1975) (res ipsa loquitur not applicable to brain abscess following tonsillectomy); *McCall v. St. Joseph's Hospital*, 165 N.W.2d 85, 88-89 (Neb. 1969) (res ipsa loquitur not applicable to staphylococcus infection after surgery for herniated disc); *Schofield v. Idaho Falls Latter Day Saints Hosp*., 409 P.2d 107, 109 (Idaho 1965) (res ipsa loquitur not applicable to eye infection after operation to remove cataract); *Harmon v. Rust*, 420 S.W.2d 563, 564 (Ky. 1967) (res ipsa loquitur not applicable to infection following skin grafts for burns)).

Like other courts considering negligence claims based on infections, this Court finds that, generally, "infections commonly occur without negligence," *Pepper v. JC Penney Corp.,* 2008 WL 4614268, at *5 n.3 (W.D. Wash. Oct. 16, 2008) (citing *Robison v. Cascade Hardwoods, Inc.*, 72 P.3d 244, 252 (Wash.App.2003) (reasonable inference of negligence: "(1) when the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.") The Court finds, specifically, that the facts of this alleged infection, which are bacterial contamination during a sterile surgical procedure, fit within the confines of the cases which have held that infections commonly occur without negligence.

Res ipsa loquitur is especially not available to the Plaintiff because the Defendant presents evidence that infection is a known and inherent risk of the procedure. (Motion, SOF, Dr. Thal's Declaration (Doc. 57-1) ¶ 7 (describing device implantation as always caring a risk of infection, re-entry of the device pocket to perform the generator change presenting increased risk of infection); *see also* (Informed Consent 3/1/2015 (Doc. 57-2) at 8 (description of known risks including infection). In short, the expert testimony that

infection is a known inherent risk of the procedure which may occur in absence of negligence not only defeats Plaintiff's argument for res ipsa loquitur, it  also means that the Plaintiff cannot survive the motion for summary judgment without presenting expert testimony to support his assertion of negligence.

"The burden is on a plaintiff to establish the applicable standard of care." *Kalar v. MacCollum*, 496 P.2d 602, 604 (Ariz. 1972). "A doctor is not liable in negligence for his mere mistakes in judgment in the treatment of his patient, but is only liable where his treatment falls below the recognized standards of good medical practice." *Id*. "[U]nless the conduct complained of by the doctor is readily ascertainable by laymen, the standard of care must be established by medical testimony." *Id*.; *see also Gaston v. Hunter*, 588 P.2d 326, 342 (Ariz. 1978) (requiring expert medical testimony to establish standard of care). "[N]o presumption of negligence arises from the mere fact of unsuccessful treatment[.]" *Gaston,* 588 P.2d at 343. Moreover, "absent negligence by the physician there is no malpractice when the plaintiff suffers an adverse result which is an inherent risk of the procedure performed [.]" *Id.*

Because there is no inference of negligence based on the doctrine of res ips loquitur, and Plaintiff has not presented expert evidence to dispute the Defendant's expert's testimony, the Defendant prevails on summary judgment regarding the negligence claim.

The negligence claim likewise fails because, without an expert, Plaintiff cannot prove causation, another element necessary to establish negligence. He cannot show his injury "would not have occurred 'but for' the defendant's conduct" – a concept known as "causation-in-fact." *Ontiveros v. Borak*, 667 P.2d 200, 205 (Ariz. 1983) (en banc). He cannot prove "proximate cause," meaning the "natural and continuous sequence, unbroken by any efficient intervening cause, produc[ing] an injury, and without which the injury would not have occurred." *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1278 (Ariz. App. 2001) (internal quotation marks omitted). While causation typically involves questions of fact, *Fehribach v. Smith*, 22 P.3d 508, 512 (Ariz. App. 2001), the Plaintiff's failed reliance on res ipsa loquitur leaves the Plaintiff without any evidence from which a

fact finder could find a reasonable connection between Defendant's acts and the Plaintiff's damages or injuries. *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (1990).

### B.    Count Three: Battery (May 9.2016 surgery)

Turning his attention to the surgery performed on May 9, 2016, to remove the pacemaker from the infected pocket, Plaintiff asserts that tort liability in this matter can be established through battery alone (Count III). Plaintiff argues that "[n]o substantial harm to Plaintiff would have occurred following the pacemaker device replacement surgery performed on May 9, 2016 but for the recurrent pacemaker pocket infections that resulted after Defendant, through its cardiologist, Sergio Thal, M.D., failed to perform such surgery within the limits of Plaintiff's consent." (P CMSJ/Response (Doc. 82) at 17.) Plaintiff's battery claim relies on a May 5, 2016, consent form that stated "[i]f an infection is present, the [pacemaker] generator will be removed and you will have antibiotics for several weeks before a new generator is replaced." *Id.* Plaintiff argues that it is undisputed that the pacemaker pocket was infected when the pacemaker was removed and that it was replaced on May 9, 2016, only three days after the extraction due to infection, not several weeks after having antibiotics. *Id.* "Plaintiff's pocket infections recurred for no less than an additional year beyond such device replacement surgery; and [] there was no resolution of Plaintiff' recurrent pacemaker pocket infections and ensuing complications until no less than five additional surgeries were performed during the following 17 months." *Id.* at 17-18.

Plaintiff correctly sights the law on battery and medical malpractice claims, as follows:

> "A medical malpractice action brought against a licensed health care provider shall not be based upon assault and battery." *Desert Palm, et al. v. Petta*, 236 Ariz. 568, ¶ 57, 343 P.3d 438 (Ariz. Ct. App. 2015) (quoting A.R.S. § 12-562(B)). "Nevertheless, 'claims involving lack of consent, *i.e.*, the doctor's failure to operate within the limits of the patient's consent, may be brought as battery actions.'" *Id*. (quoting *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 310, ¶ 13, 70 P.3d 435, 439 (2003)). "For consent to be effective, it must be 'to the particular conduct,

1
2
3
4

or substantially the same conduct.'" *Id*. (quoting *Duncan* at 311, ¶ 16, at 440 and citing Restatement § 892A (2) (b)). "'[A]nything greater or different than the procedure consented to becomes a battery.'" *Id*. (quoting both *Duncan, supra* and *Hales v. Pittman*, 118 Ariz. 305, 310, 576 P.2d 493, 498 (1978)).

5

(P CMSJ/Response (Doc. 82) at 18.).

6
7
8
9
10
11
12
13

Plaintiff claims a battery occurred "when Dr. Thal failed to perform a procedure within the limits of Plaintiff's consent: on May 9, 2016. Dr. Thal replaced a pacemaker generator without first providing Plaintiff the several weeks of antibiotics required in the consent form executed only four days prior." *Id*. This was a substantially different procedure from the procedure covered by the consent form. *Id*. "Precisely because Defendant, through its staff electrophysiologist, failed to operate within the limit of Plaintiff's consent, and Plaintiff was substantially harmed thereafter." *Id*. Plaintiff asks the Court to find Defendant liable under the FTCA based on the battery. *Id*. at 18-19.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Whereas the negligence claim turned on a question of law, now, the uncontested facts become important, in relevant part as follows. On March 2, 2016, the first medical procedure was performed at SAVAMCS to change out Plaintiff's old pacemaker because it was approaching expiration. (D SOF (Doc. 57) ¶ 15.) On April 15, 2016, Plaintiff presented with infection in the pocket and antibiotic treatment was initiated. *Id*. ¶ 19. On May 5, 2016, Plaintiff signed the consent form for the pacemaker which had been implanted on March 2 for it to be removed from the infected pocket and moved to the other side of his chest, and for possible lead extraction. *Id*. ¶ 23. On May 6, 2016, the pacemaker, which had been implanted on March 2 was removed from the infected pocket. Dr. Thal removed one lead but capped two 26-year old leads. *Id*. ¶ 25. On May 9, the surgery was performed to implant the pacemaker on the left side of Plaintiff's chest. *Id*. ¶ 32.  Eventually, the old leads would have to be surgically removed before the Plaintiff would fully recover from the replacement of his old pacemaker with a new device.

28

There are other facts relevant to the issue of negligence, including Plaintiff's refusal of recommended preferred antibiotics, but they are not relevant to the question of battery. Like Plaintiff did when he discussed res ipsa loquitur and ignored the approximate 30-day span of time between the March 2 surgery and the reported infection, he ignores in discussing battery, the time span from April 15 to May 5 when he was treated with antibiotics to resolve the infection in the pacemaker pocket. It is clear from the uncontested medical record that there were approximately 14 days of antibiotic treatment, not three days, from when the infection was reported, and the pacemaker was removed from the infected pocket. It took three days, from May 6 to May 9, to complete the procedure covered by the May 5 consent form, which was, precisely, to move the new, recently implanted pacemaker from the old infected pocket and place it in  a new pocket on the left side of Plaintiff's chest. Plaintiff had already received the more conservative antibiotic treatment for the infection, without success. There is no factual support for Plaintiff's claim of battery.

C.     Conclusion

Plaintiff fails to raise a disputed question of fact on the claim of negligence because he did not provide expert testimony as to the standard of care and that the conduct which allegedly occurred at SAVAMCS breached that standard of care. This failure to support the claim of negligence with expert testimony also precluded Plaintiff from making prima facie showing that the surgical proceeding on March 2 was the direct and proximate cause of his alleged injury. Plaintiff's claim of negligence based on res ipsa loquitur fails as a matter of law.

The Plaintiff's claim of battery fails as a matter of fact. The Court has not weighed the evidence or determined credibility and has construed all inferences in favor of the

/////

/////

/////

/////

Plaintiff. The Court finds that there is no genuine issue as to any material fact from which any trier of fact could reasonably find for the Plaintiff on his claim of battery.

**Accordingly,**

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. 53) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Crossmotion for Summary Judgment (Doc. 82) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

Dated this 8th day of June, 2021.

Honorable David C. Bury
United States District Judge

- 15 -